11   260
108  535

WILLIAM PRATT *v.* JAMES A. McHATTON et al.

Action for the liquidation of partnership affairs.

It is well settled that partnership books are evidence for and against the partners, in controversies arising among themselves, but only the books, and entries contained in them, at the time of the dissolution of the partnership. The entries made after this time by one of the partners, who has possession and care of the books, cannot bind the other partners, unless he has also had the books in his possession, examined the entries, and, when he had the means of ascertaining their correctness, made no objection, or in some similar manner acquiesced in or approved of the books.

By the contract of partnership, two of the partners (defendants) were required to transact the outdoor business, and superintend the sales. *Held:* They could not be expected to attend at remote places, nor await the slow process of sales at the principal points where goods were in store for the purpose of being offered for sale; and they are entitled to a credit for commissions for sales actually paid by them in good faith.

In order to hold one of the partners liable for losses on the sales of goods, it should be shown that he violated the obligations imposed upon him by the contract of partnership; and that the partners objected to his acts as soon as advised of them, or within a reasonable time after the entries in regard to such sales had been made upon the books of the firm. It is not enough to await the result of the sales to ascertain whether the same have been fortunate, or unfortunate, before objecting.

Defendants, who assumed the collection of outstanding debts, assumed, as *negotiorum gestores*, the obligation of using due diligence.

The appointment of a liquidator for the settlement of partnership affairs rests, in a great measure, in the sound discretion of the court.

Accounts due a partnership in liquidation should not be sold, unless the trouble, expense and delay of collecting, will render them less productive to the firm than their immediate sale; or unless they are desperate, or of little value, and the delay in regard to their collection, prevents a final decree of partition within a reasonable time. These and like reasons, render a sale proper.

Charges for interest made since the dissolution of the partnership, must be confined to such sums as the respective partners had promised to bring into the partnership, or for funds withdrawn by them, and in the absence of any agreement in writing, the rate must be five per cent.

The lessees of the penitentiary have no right to make any contract for the use, or hire of the negro convicts, except in the employments required by law, and any items for such services made by one of the partners, must be disallowed.

A several judgment against one, in favor of the other individual partners, should not be rendered where there are available partnership assets by which the amounts received by the partners can be readily equalized

Code 2244, 2245, 2994, 9829.

APPEAL from the District Court, Sixth District, parish of East Baton Rouge, *Robertson,* J. *Dunn,* and *J. M. & J. E. Elam,* for plaintiff and appellant. *Lacy, Avery, Davidson,* and *McHatton,* for defendants.

MERRICK, C. J. This suit is brought for the liquidation of a partnership, which continued from 1844, until October, 1849. The object of the partnership is explained in the original agreement, which is as follows, viz:

"This agreement, made and entered into this 22d day of June, 1844, between *James A. McHatton, Wm. Pratt, Chas. G. McHatton,* and *George W. Ward,* all of the State of Kentucky, except *George W. Ward,* who is of the State of Louisiana, witnesseth,

That the said *James A. McHatton* and *William Pratt* have, by contract, dated the —— day of ——, 1844, leased of the State of Louisiana, through the Governor thereof, the Penitentiary of said State, for the term of five years, commencing at the date of said contract, to which reference is had, and made part of the agreement.

Now, the lessess, *McHatton & Pratt*, agree to form an equal partnership in said lease with *C. G. McHatton* and *G. W. Ward*, the four to own one-fourth interest, such to be equally bound for all the requisitions of said lease, and for all the debts that may be contracted by said institution during the continuance of the lease, and to divide all profits equally. That the said parties are to furnish the sum of five thousand dollars as capital stock to carry on the business of the institution, or so much thereof as may be deemed necessary by a majority of them.

The said *William Pratt* and *C. G. McHatton*, agree to reside permanently at Baton Rouge, and devote their whole time to the superintendence of the business of said penitentiary, without charges for their services.

The purchase of materials and supplies are to be made by *James A. McHatton* and *George W. Ward*, and also all out of door business is to be transacted by them. They are also to make all settlements of the concern with the State or individuals. The said *George W. Ward* is to superintend the sales of all articles manufactured in the penitentiary, the sales to be made for cash, or with the guarantee of some responsible commission house, if on time, which superintendence he is to give free of charge. The articles to be manufactured to be divided by a majority of the partners; no piece goods to be cut, but all sales are to be made by the piece, or to make the clause more explicit, no retail sales are to be made. This agreement to take effect so soon as the aforesaid lease is signed by the Governor of the State of Louisiana, *James A. McHatton* and *William Pratt;* this 22d day of June, 1844, in presence of the subscribing trustees.

(Signed,)                                     GEORGE W. WARD,
                                              JAS. A. McHATTON,
                                              C. G. McHATTON,
                                              WM. PRATT."

The defendants, *James A. McHatton*, *Charles G. McHatton*, and *George W. Ward*, in their answer, allege an indebtedness on the part of the plaintiff to the firm, and pray that they be considered plaintiffs in reconvention, and the debts due by the firm, be paid out of the assets; that the residue on hand, and the accounts, be sold at public auction, and that the defendants be paid a sum to render the amount received by them equal to that received by plaintiff; that proceeds of the sale be divided between the plaintiff and respondents; that plaintiff be condemned to pay the costs, and for general relief.

The defendants annex to their answer, a statement of the respective accounts of the parties with the firm, showing that the plaintiff had received $14,531 12; *James McHatton*, $13,518 90; *Charles G. McHatton*, 13,419 87; *George W. Ward*, $13,593 90.

They also annex a list of the outstanding liabilities, and the accounts and claims due the firm, together with a balance sheet, showing the state of the affairs of the firm to the 21st day of May, 1852.

Auditors were appointed, who stated an account between the parties, taken from the books alone. The Judge of the District Court ordered the accounts due the firm to be sold, by a receiver, at public auction, to pay the debts and be distributed among the partners, and gave an individual judgment against *Pratt*, in favor of each of the defendants, viz: in favor of *James A. McHatton*, for $300 21½; in favor of *Charles G. McHatton*, for $220 27½; and in

PRATT
*v.*
McHATTON.

favor of *George W. Ward*, for $208 36½; and decreed the costs to be equally borne by all the parties.

The style of the firm was *McHatton, Pratt & Co.* The amount of the business transacted was very large; counsel state over four millions of dollars.

After the dissolution of the firm by its limitation, the defendants alone became the lessees of the penitentiary, and conducted their business under the name and style of *McHatton, Ward & Co.*

They received the assets and books of *McHatton, Pratt & Co*, and made collections and disbursements on account of that firm. They appear to have made use of the books of the old firm for the purpose of making the entries in relation to that business. The balance sheet annexed to defendants' answer, shows the receipt of $89,619 88, and the disbursement of the same, with the exception of a balance of $494 09.

The plaintiff and appellant has raised numerous objections to the proceedings and judgment of the lower court, and we will proceed to notice them as briefly as possible.

It is objected, that the Judge of the lower court erred in admitting in evidence against the plaintiff, the books of the firm, so far as it respects the entries made in them by *McHatton, Ward & Co.*, after the dissolution of the partnership of *McHatton, Pratt & Co.*

The testimony shows, that after the dissolution, the entries were made in the books by *McHatton, Ward & Co.*, or by persons in their employ. It is not shown that a single entry was made by *Pratt*, or that he had any control over the entries, or even that he ever examined the books in reference to those entries made by defendants. A witness, *Hubbs*, the clerk of the State, says, however, that *Pratt* had access to the books as much as defendants, while he had them in possession, but that he, the witness, never had any of the receipts or vouchers in his possession. It was *Hubbs'* duty to keep the books of the State, distinct from those of *McHatton, Ward & Co.*, and what control he had over the books of *McHatton, Pratt & Co.*, after the dissolution of the partnership, is not shown. It is well settled, that partnership books are evidence for and against the partners in controversies arising among themselves, but only the books and the entries contained in them at the time of the dissolution of partnership. The entries made after this time by one of the partners, who has possession and care of the books, cannot bind the other partner, unless he has also had the book in his possession, examined the entries, and, where he had the means of ascertaining their correctness, made no objection, or in some similar manner, acquiesced in or approved the books; otherwise, they must be held, as to these entries, the books of the individual partners who made them. Such books, the Civil Code expressly excludes from being used as evidence in their favor. C. C. 2244 and 2245.

We think, therefore, the District Judge erred in allowing the entries in these books, made after the dissolution of the partnership, to be used as evidence against the plaintiff, and in relieving the defendants from the necessity of producing the obligations taken up by them, which are the best evidence of the payment and extinguishment of the debts and of the disbursements for which they claim credit. The Auditor's report, which is but a mere compilation from the entries in these books, and which was made without any examination of the vouchers, for the same reason conclude nothing, and must be disregarded.

This view of the case will require it to be remanded, in order that the defendants may have an opportunity of offering legal testimony in support of their claims. Various questions are presented by the record, which we are requested by counsel to pass upon, in order that the case may be finally disposed of in the lower court, without another appeal. We do so, under the hope that it will enable the parties to close a controversy which probably has grown out of the multiplicity of the transactions involved, rather than any want of fidelity on the part of the partners.

The following points are made by plaintiff's counsel, which we will endeavor to dispose of in the order presented, viz:

1. It is maintained by the plaintiff that the contract made by the parties, is a law unto themselves, and therefore *James A. McHatton* and *George W. Ward*, had no authority to employ any persons either to buy or sell materials or goods, at the expense of the firm.

2. That *George W. Ward* had no authority to sell any goods otherwise than for cash, or if on credit, guaranteed, and that he is responsible for all losses that may accrue on account of any sales made otherwise than as stipulated in the contract.

3. That the defendants, having assumed the collections of the outstanding debts and disbursement of the same, were bound to use diligence, and if they have neglected to do so, by a resort to legal process, they are responsible to the plaintiff for any loss he may have sustained.

4. That the Judge *a quo* erred in ordering a liquidator to be appointed, and a sale at auction of the assets. That rights and credits are not to be sold, unless proved desperate; and then only for the benefit of those in fault.

5. That between the years 1844 and 1849, there was no law that authorized interest to be charged on open accounts or "yearly balances," and since the law has been changed, interest can only be charged at five per cent.

6. That convict negroes, being sentenced to hard labor, no action can be maintained by a lessee or other person to recover hire for the use of them. The private use or hire of convicts cannot become legally the subject of a contract either express or implied, and lessees were bound, as officers of the State, to carry out the object of the law, and inflict punishment at hard labor, and will not be heard to the contrary.

I. Under the first point, it is urged, that items amounting to $10,510 '95, charged as commissions paid to sundry persons for sales of manufactured articles, ought not to be charged to the firm, because *George W. Ward*, by the contract of copartnership, was bound to superintend the sales of the manufactured goods. In regard to this objection, we are of the opinion, that the items for commissions upon sales which were paid and entered on the books of the firm during the existence of the partnership, as a charge against the firm generally, must be held by the court to be binding upon the respective partners. It was the construction which the parties placed upon the contract themselves. See Story on Partnership, sec. 191.

By the contract of co-partnership it was made the duty of *James A. McHatton* and *George W. Ward* to transact the out-door business and superintend the sales. If they gave their personal attention to this, and attended to their duties faithfully, it was all that was required or could be expected. It was not in the power of *George W. Ward* to attend the sales of manufactured articles in remote places, nor await the slow process of sales at the principal points

where goods were in store for the purpose of being offered for sale. We see no objection, therefore, to the allowance of such charges for commission as were regularly entered upon the books during the partnership, unless such entries are shown to be made in error or fraud. If *James A. McHatton* or *George W. Ward* neglected the duties imposed upon them by their agreement, besides being alleged, the negligence and consequent damage ought to be proved by those making the complaint.

II. In order to hold *George W. Ward* liable for losses on the sales of mer·chandize, it should be shown that he violated the obligations imposed upon him by the contract of partnership, and that the parties objected to his acts as soon as advised of them, or within a reasonable time after the entries in regard to such sales had been made upon the books of the firm. It is not enough to await the result of the sales, and ascertain whether the same have been fortunate or unfortunate before objecting.

III. It is clear that the defendants have assumed as *negotiorem gestores*, in regard to the books and accounts, the obligation of using due diligence to collect the debts due to the firm. C. C. 2274.

IV. There is no error in appointing a liquidator or receiver. It is one of those matters which must be left in a great measure to the sound discretion of the court. Whether the accounts should be sold depends upon their character. They should not be sold unless it should be shown that the trouble and expense and delay of collecting would render them less productive to the firm than their immediate sale, or that they are desperate or of little value, and that the delay in regard to their collection will prevent a final decree of partition within a reasonable period. These and the like reasons may be sufficient to justify the sale of rights and credits, but as a general rule they should not be sold except upon cause shown.

V. Between the years 1844 and 1849 the law did not allow, as a general rule, interest upon accounts except after a party had been put in default. The exception was where one person stood in the relation of agent or mandatary for another, (C. C. 2994,) or where a partner promised to bring into the partnership a sum of money, or had taken out the funds of the partnership. C. C. 2829. We think the entries regularly made on the books of the partnership during its continuance are *prima facie* binding upon the partners, though the rate of interest should have been calculated at eight per cent. instead of five, as allowed by the Code. The entry so made in the books of the firm is presumed to have been made with the assent and approbation of all the partners, and it is as binding upon each partner as though made by himself. *Jordan v. White*, 4 N. S. 339.

The charges of interest, however, made since the dissolution of the partnership, must be confined to such sums as the respective partners had promised to bring into the concern, or funds withdrawn by them, and in absence of any other agreement in writing to the contrary, the rate must be five per cent.

VI. The partners had no right to make any contract for the use or hire of the negro convicts, except in the employments required by law. Any contract, either express or implied, for any other use, is against the public policy, and cannot be enforced, and all items for such services should be struck from the account. The appellees complain that there was error in the judgment of the lower court in decreeing the costs to be borne by the partners equally. The action of partition is one in which all are plaintiffs and all are defendants, and

PRATT
*v.*
McHatton.

where the decree orders the distribution or division of anything between the partners, we think the costs may be decreed against all.

We will also remark that a several judgment against one, in favor of the other individual partners, should not be rendered where there are available partnership assets, by which the amounts received by the partners can be readily equalized.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that this cause be remanded to the lower court for a new trial, with instructions to the court not to suffer the defendants to offer in evidence the entries made in the partnership books since the dissolution of the partnership, unless an authorization or ratification of the entries by the plaintiff be shown, and to reject the report of the auditors, and in other respects to proceed in conformity to the views herein expressed, and in conformity to law. And it is further ordered, that the appellees pay the costs of appeal.